There you go. Let me ask Mr. Jobe, first of all, welcome to both of you. Thank you for participating in the arguments today. Let me ask Mr. Jobe, would you like to reserve time for rebuttal and how much time? Although you've seen we're quite generous with time, so. We'd like to reserve five minutes for rebuttal, Your Honor. Okay. All right, then please proceed. Your Honor, this is a case where the government, the FAA, the federal government, essentially said they were not going to issue a sanction and yet they went ahead and issued what effectively is a sanction that applies to a whole number of three or four issues. First of all, they claim that we didn't file the motion for reconsideration on his behalf timely. We did file it within the 60 days to the Ninth Circuit, and the agency's decision is not filed until... You filed within 60 days not of that initial letter. You filed within 60 days of the second letter. How do we know that that's a motion for reconsideration such that the deadline of 60 days runs from the second letter? The second letter was Mr. Russ Christensen, who is one of the two top lawyers for the FAA. We asked him to consider allowing us the chance to be heard in a meaningful way, and he wrote us back and said he was not going to do it. The case was closed and no further proceedings. From that day, we did file within 60 days. So we believe that his second response, since we received a response, allows us to file this appeal. So your argument is that the deadline, 60 days, runs from the second letter. Right. In other words, if he hadn't responded at all, the court might be more concerned about it. I should be more concerned about it, but the problem was I didn't get pertained to the case until that time. I wrote to him once, and he had no answer. He said the case was closed. I wrote back and asked him to reconsider it. We had new evidence that he wrote back, and so I think our reconsideration starts from that second letter. Okay. Is there any circuit case that says that if the agency doesn't have a reconsideration or review procedure process, that just writing a letter asking the agency to reconsider its action would toll the time for the filing in federal court? I didn't try to find a case like that. I just felt like we still had a dialogue with the FAA going on about our reconsideration, and he entertained our request, and then he answered it the second time, and so I feel like we should be given that second time. Because the real egregious unconstitutional part of this case is the fact that he never had a proper time to have a hearing, call witnesses, do discovery, possibly have experts, and nothing else at an NTSB hearing. This is an odd case because they said they weren't taking action, but they did take action, and they took action to preclude him from doing anything that he might put on evidence and prove that he had done everything correct. I'm sorry to interrupt you. What are your thoughts about the Fifth Circuit and the Tenth Circuit case that says there's no tolling of the 60-day deadline to file in federal court unless the agency provides a procedure for reconsideration or review of an agency action? Well, I believe a reasonable attempt within a few days of the first deadline back to the FAA, Mr. Christianson's level, was that attempt. I asked, and he came back and responded. So I don't know of any cases to admit this may be the first case, but the truth of the matter is he needs to have an opportunity to respond. The whole problem with this case was that he never had a forum to defend himself and prove that the agency was wrong and deprived him of his professional career, and his personal reputation was tarnished by their action. He did have his lawyer write a letter to SimCom denying use of any controlled substance and also denying that he adulterated his urine sample, right? So he did have the opportunity with counsel to try to dispute during the investigation, right? Well, this was part of our representation to try and obtain evidence from them so we could respond to the letter and ask them to reconsider their decision. So it sounds a little bit like the prior case where we just were not, we were precluded from getting to the evidence or having a hearing so we could have evidence properly submitted. The time's running, so I want to make sure I give you this opportunity. The statute says 60 days, but then it says the court may allow the petition to be filed after the 60 days only if there are reasonable grounds for not filing. So do you have reasonable grounds for not filing within 60 days? I do because I never was brought into the case. No, no, not you, but does Mr. Graham have reasonable grounds? It strikes me that there's a possible argument there. I mean, he wasn't just sitting on his rights. He was in the agent continuous correspondence, and he's not sleeping on his rights. In fact, he's pretty quick. Well, we tried to move as quickly as we could once we were asked to come into the case, and we asked Mr. Christensen, who I know pretty well, if we could have some additional time, and he said, no, the case is closed. This is our opinion that he violated the regulation. Okay, now assume for a moment that the failure to meet the 60 days is forgivable because there were reasonable grounds for not filing within 60 days. So assume we get to the merits. I don't understand what the problem is, meaning the test of the urine was not performed by the FAA. It was performed by this organization that was basically responding to its employer. So the only thing that the FAA is responding to is a test that they did not perform that says that the urine sample was adulterated. Given that, what did the FAA do wrong? The FAA concluded that Mr. Graham violated a federal drug testing regulation. Well, that's true if, in fact, the sample was adulterated. Well, he was given no opportunity to provide discovery until we asked for the reconsideration to open it back up so we could take some discovery and provide the evidence and ask for a hearing. The biggest problem is he's given absolutely no hearing with anyone about this. And when he got to us, we immediately tried to give adequate notice. It seems like the FAA was fine with that, except that they weren't going to change their opinion. But, Mr. Scott, didn't he have the opportunity to contest that finding at SimCom and with the medical reviewing officer there? He might have had the opportunity, but he didn't have the knowledge. The way this process is set up, the FAA is required to adopt the findings that are sent to the FAA from SimCom, and that's exactly what it did. He had an opportunity to contest the finding that it was an adulterated sample. It just wasn't contested before the FAA. It was a done deal when it got to them. And in that same regard, won't he have another opportunity? Your Honor, this circuit, the Ninth Circuit, has held that an agency decision is non-final to request reconsideration has been acted on. We don't feel that it was acted on until I appeared and asked for extra time. As far as what he knew to do, he knew that he was a commercial pilot for 52 years, and he now works at a flight simulator training center in Arizona, or he did work there, but he can't work there anymore because of what happened. But he didn't have any opportunity to investigate this whatsoever because they closed it down, so we appealed to the Ninth Circuit. So in this case, the FAA basically is circumventing due process that would have been afforded Mr. Graham by unilaterally and arbitrarily concluding Mr. Graham violated federal drug testing regulation and applied a sanction with due process. And here are the reasons why he should be allowed to put evidence on. Is there any procedure under which he can challenge at the FAA the accuracy of the drug testing? Well, we were asking them to reconsider, and we were going to point out for the first reason, his employer that sent him for this test did not do it while he was on duty, which violates Part 40, 49 CFR Part 40. You cannot send somebody for a drug testing, random test, when he was not on duty. He has to be on duty. For 52 years as a pilot, when they would ask him to have a test, they always did it when he landed at an airport. And they have these testing facilities at all these airports to immediately test the pilot right away, not wait a long time. And they didn't do that in this case. He was not on duty. He was at home, and he got this letter, and that violates their own regulation in a Ninth Circuit case that we cited in our briefs. The next thing was the FAA chose to staunchly defend the FAA's conclusion following this investigation that Mr. Graham violated the federal drug regulations despite knowing the test would not be- Mr. Joe, I'm sorry to interrupt. Has Mr. Graham completed the SAP, the substance abuse evaluation process? Well, he's not guilty of anything because he didn't do anything wrong, and he never got a chance to have an adequate hearing before the NTSB or any federal court because he didn't have- So he has not completed the program? He didn't take the program because he's not guilty of it. You can't do this test and violate the Department of Transportation's regulation on how it has to be conducted. As I just mentioned, when he's not on duty, it has to be done when he's on duty. He has to go straight to the test. If you don't do it that way, then it's not being done correctly. That's why we cited that in our briefs. And even the FAA, similar to the DOT policy I just mentioned, had 5190.1d, where he took no action against Mr. Graham. Instead, FAA violated its own policy by issuing a so-called no-action letter that actually took action that Mr. Graham had and violated Mr. Graham's constitutional protected- Could you focus on the issue raised by Judge Fletcher and Judge Kain that where is the redressability if the determination that Mr. Graham refused the test was made by SimCom and the medical review officer that SimCom, his employer, hired? The agency itself took no action. How can you get relief here? Had we been able to do discovery, we would have found out that the medical review officer made a mistake. We just had a case concluded successfully for another pilot. That's exactly what happened. The medical review officer is down in Miami. He's in Arizona. The FAA is in Washington. And so we have, you know, he has to be able to present this to some tribunal and raise evidence. But he was given an opportunity. The FAA notified him on December 10th of 2020 that it was opening its investigation, let him know that he could request all the data to productively participate in the proceeding related to the investigation. You wrote a letter eight days later, December 18, 2020, saying Mr. Graham denied using any prohibited substances, denied attempting to adulterate his urine specimen. So there was some time for you to participate. This letter was written by you. And it was only a month later, January 12, 2021, where the FAA decided not to take action. So there was some opportunity to participate in the investigation, wasn't there? Well, 10 days to get all the evidence together is completely inadequate. And, you know, the District Procedure Act provides for longer than that. And we were coming in to begin to do that. And we were cut off at the pass by them. But that violates their own policy at 5190.1D. By taking no action against Mr. Graham, instead the FAA violated its own policy by issuing a no-action letter that actually took action against him and said he had done this and he was therefore guilty of these problems and injured him professionally and personally. And the truth of the matter is he just had a high A1C situation, which was very temporary. And it was not allowed to be explained to them. And it didn't – we just didn't have a chance to get into this because we couldn't do any discovery. The only thing we could do was appeal to your court. Let me see if my colleagues have any further questions. No? Okay. Thank you. Let's go ahead, please, to the Respondents' Council. I would like to begin with by addressing the questions about the timeliness of the petition. Judge Fletcher had questions about whether the reasonableness exception to the 60-day timeline would apply here. We would first point out that certainly Petitioner hasn't raised that as an argument before this court, but there was nothing here that suggests that the delay in filing a petition was reasonable. Petitioner notes that the letter, the no-action letter, invited a conversation and that he construed that as an opportunity to seek reconsideration, but examining the letter reveals that it was an invitation somewhere to call a 1-800 number if you needed clarification about the correspondence. Well, no, it was not an invitation to do a 1-800 number. It was a very specific number. It said, call me. Yeah, but analogous to a 1-800 number. If you have questions about how this return to duty process applies – Well, no, I'm sorry. I don't think it's analogous to a 1-800 number. It was, if you have questions, call me. Here's my number. Your Honor, whether or not it's analogous to a 1-800 number or not, it certainly wasn't an invitation for Petitioner's counsel to file a motion for reconsideration. The letter simply didn't fashion an ad hoc reconsideration process that the FAA has not crafted in any regulation or any other proceedings. Was it unreasonable for Mr. Graham's attorneys to treat this period, this 60-day period during which they're in active communication back and forth – I mean, they're not just sleeping and doing nothing – to treat this as, listen, I'm trying to work this out rather than file a lawsuit. Your position is they've got to file a lawsuit. Shoot first, ask questions later. File a lawsuit now and negotiate later. I mean, that's what you're after. The position is that in the statute, which provides for a 60-day timeline, and if it were the case that any sort of conversation after a final agency action rendered the action itself non-final, then this court would be flooded with petitions for review of actions by all sorts of – No, I understand that it is a deadline, and I'm willing to accept the idea that there's no actual formal process for motion for reconsideration. I'm more interested in sort of the escape hatch about whether it was reasonable under the circumstances because he's not sleeping on his rights. He's in active communication, and when he gets the second letter, which makes it clear that, yeah, we were right the first time around and we're not going to reconsider it, whether it's a motion for reconsideration or not, what they're saying is, well, no, sorry, what we said before, we still mean it. He files within 60 days of that. Why is that not reasonable? Because, Your Honor, if you look at the second letter, it isn't a rejection of or an engagement in any sort of reconsideration. It's a reiteration that our initial decision was final at the time. Right. I know I read both letters. I got it. Yeah. And then it's apparent on its face that the initial letter was the agency's final decision, and petitioner had 60 days from that point to seek review of the agency's decision. But turning to the merits, Your Honors had questions about whether the agency has a process for reviewing decisions by the employer or the medical review officer that this was an adulterated sample or a refusal, and the answer is no. The agency's investigation by the Drug Abatement Division is an investigation into the circumstances of the refusal, and it takes as decided on its face the decision of the medical review officer who makes the medical judgment about whether there was a reason for the low pH that was explainable or there were other medical circumstances, and then that decision is submitted to the FAA, which then determines whether there are circumstances that justify taking action against an airman's certificates. But that decision does not involve reviewing the underlying medical determination that there was an adulterated sample and a refusal to test. But the language of the FAA's letter says the nature of this investigation is to determine whether you refuse to submit to a random drug test. And similarly, when you send a no-action letter, you're concluding that this individual has refused and requiring them to complete a substance abuse professional evaluation. So if you're correct that you're not really doing anything other than just accepting the medical review officer's decision why do you even need an investigation? Why can't you just rubber stamp the employer's agency, SimCom's agency, this medical review company, has said you've refused a test, we accept that. What do you need to investigate whether Mr. Graham has refused a test or not? For precisely these types of circumstances, one, the agency investigates to determine whether it was Mr. Graham who refused the drug test or whether there was some error in the transmission of the records to confirm that that did in fact happen. And two, the investigation's primary purpose is to determine whether to take action, whether he is unsafe to perform functions that are sensitive to the health and safety of his passengers or students. And so that is, as was made clear in the notice of investigation in the no-action letter, the agency's investigation is with respect to the certificates it regulates, not with respect to the medical decision that he had refused a drug test. You know, it would be helpful if you guys would speak English. He did not refuse to take the test. He took the test. According to the medical officer, it was adulterated. Why can't you just say we conclude that he submitted an adulterated sample? I mean, I understand that you've got a term of art, but it's a really odd one. Your Honor, it's by regulation. I understand that. And this is not your fault. I'm just complaining that it would be nice if the regulation spoke English or rather described accurately what was going on. Your Honor, I'd imagine that there would be a lot about this highly regulated area in which pilots and their employers participate in drug testing that that might not sound like English to lay folks. But the regulation is clear, and I don't think that Mr. Graham or anyone else has professed any doubt about whether submitting a sample that had a pH below the level appropriate for human urine was considered a refusal to test. So is there any way for Mr. Graham to challenge the substance abuse professional requirement with the FAA or he only has to come to court? Your Honor, the requirement that he complete a return to duty process attaches to the employer's refusal. So if the question is how should he challenge the consequences that he needs to speak with a drug and alcohol counselor and take an additional drug test before he gets behind the wheel again, that is a challenge that flows from his employer's determination. And so the appropriate challenge would be to take issue with that decision. In this case, as Judge Cain pointed out, he had an opportunity before the medical review officer to be interviewed. It was a requirement that he be interviewed. He also had an additional opportunity to request testing at additional at a second lab of his sample under this split sample option, which he could have done at the time to confirm that that this was if he had any questions about the adulteration determination by the medical review officer. So let me make sure I've got this straight in terms of the options available to Mr. Graham. The test comes back showing a pH level that's too low. The conclusion of the medical officer is, well, the only way it could be too low is that it was adulterated. The explanation you gave that you're a diabetic really isn't insufficient to do that. It seems to me at least possible that this was not an adulterated sample. Mr. Graham says it's not. What can he do to challenge that? Is it entirely in front of the employer? Is there nothing in front of the FAA where he can challenge the accuracy of the conclusion that it was adulterated? Yes, Your Honor. Unless the agency took some sort of enforcement action, which it didn't do here, his recourse is against his employer's determination. He felt that that was wrong. So if the agency had taken an enforcement action, he could then challenge the accuracy of the test and the conclusion that it was adulterated. He could go before the NTSB and challenge the agency's enforcement determination. And that might provide some opportunity for him to provide additional circumstances or challenge that determination as well as the appropriateness of the sanction. Let me make sure I understood your answer. So if the FAA brings an enforcement proceeding, he can challenge the accuracy of the conclusion that it was an adulterated sample? That may be part of the hearing. That is potentially possible. No, wait a minute. Are you saying you're not sure it's the law or it may be if he chooses to do so? Sorry, I think we're speaking in hypotheticals. I'm just trying to understand the legal structure. Yes, depending on the circumstances in which the agency took enforcement action against his certificates, it might be possible for him to present a challenge to the accuracy of the results. And you're saying not that it might be possible in the sense that you think the law may say that. You're saying that he could, in certain circumstances in an enforcement action, address the question and have the FAA answer the question as to whether or not it was an adulteration? Yes, in certain circumstances that may be possible had they taken enforcement action, which I think highlights exactly what happened. But this turns it into a Kafkaesque sort of thing because they take a no action letter and you say he can't challenge it under that circumstance, yet it's pretty clearly destroyed his career, meaning he's been fired. I gather from how long he's been a pilot, he's fairly elderly. I think the game's over for him. And you say, well, because we took no action, he can't challenge in front of the FAA whether or not it's adulterated. If we had taken action, he could have done so. Again, that doesn't make much sense to me. The FAA has done nothing to, as you say, end his career. They've said, we have a question about whether you're safe to perform safety-sensitive functions. Well, it is said we take no action. On the other hand, you have to go through this drug program in order to get yourself a license. No, Your Honor, we have not taken away your license, your certificates. We have said we have not revoked, we have not suspended those. We've said there is a question about whether before we put you back in action in a safety-sensitive function that has lives and safety online, there's a question. We want to resolve that by sending you to an expert to determine whether you need additional drug or alcohol counseling and to do appropriate treatment and testing. That can be a very short process. And if he does not go through that program, what happens? What adverse consequences does he suffer if he does not go through that program? Just like if he doesn't comply with any of the agency's requirements for holding a certificate, he can't perform those functions. So in other words, exactly what I said, you have just been unable to fly as a commercial pilot if he doesn't go through that program. So no action doesn't really mean no action. It means we're not going to enforce in this way. But on the other hand, unless you go through this drug program, you can't fly again as a commercial pilot. Isn't that what happens? I think that's what you just told me. Well, Your Honor, in the same way that a covid test requirement might require you to put a pause on something that you might be doing and and then resume it once you have satisfied the requirements of quarantining or taking a new test. But the analogy is not precise because you get covid because the disease attacks you. The conclusion here is that he took drugs or at least he submitted an adulterated sample. If I'm an employer and I have a conclusion by his previous employer that he had submitted an adulterated sample and I have the FAA saying, well, you know, in order to get your license back or in order to go forward in some fashion, you've got to go through the drug program. I don't want this guy because he's got a record of a bad drug test. Well, Your Honor, that's that runs counter to the entire point of the return to duty process. It is, in fact, to get people the help they need. And if people don't need additional assistance back to work, and that was the the description in the Federal Register. But his argument is get the help I need. His argument is I don't need any damn help because I was not on drugs. Right. So then he comes before a professional expert, explains the circumstances of the refusal or the adulterated sample. And that person makes a qualified judgment about whether he needs additional counseling, how extensive that would be, or if there's a limited risk, then the return to duty process is very short and he can get back to work. My understanding that can be, you know, a handful of weeks in certain circumstances, but it's an individualized counseling assessment to determine before we put this person back behind the wheel instructing pilots or up in the air. We resolve whether that person needs additional treatment and counseling and does a return to duty drug test before we put them back. But the process is designed to return airmen to duty once we've been we've determined that they are safe. Thank you. I have a question about the medical certificate. As I understand it, Mr. Graham was on a special medical certificate that had expired. Yes, your honor. Right. And he'll need a medical certificate before he could return to duty in any event. Wouldn't these issues be addressed when he applies for a medical certificate? Yes, sir. I understand that for certain certain functions, you need a medical certificate. For others, you don't. So I think it would depend on what sort of employment he was seeking. But your honor is is correct that there is a separate investigation that was pretermitted by the fact that Mr. Graham hadn't applied for any of the didn't have a valid medical certificate or a valid application for one. Was the expiration of Mr. Graham's airmen certificates in any way related to the refusal to test or the failure to complete the S.A.P. program? Not the FAA imposed no relationship between the two of those. So perhaps Mr. Graham's counsel could explain whether there was some relationship. Anyone. OK, thank you. You've had 17 minutes, so thank you for your argument. Let's now return to Mr. Graham's counsel. Yes, your honor. This is exactly. I've been doing aviation law ever since I left Vietnam in a helicopter in the Marine Corps. And I tell you, as a pilot myself, having owned an airline, having hired pilots that this this treatment by the FAA without any hearing any due process, whether it's about giving getting his his special issuance reissued. He's not going to get approved for special issues because he's had this problem. They're not going to most likely. The point is, there's never been a hearing to let him put evidence to take discovery to depose the MRO. This is what's absolutely normal in these cases. This case, they cut him off at the pass. They said, we're not taking any action, but yet you can't do anything. You have to go through the substance abuse. If you think in the pilot hiring world of today that airlines or just private operators are rich and want to have you fly them as a commercial pilot, they're going to hire somebody that has this has this on his record. There is no way. So it does affect his reputation. He's had no hearing. This this cries out for just a hearing. Every other case, I would have at least taken an NTSB hearing to put on the evidence before the judge and really have all this come into the record. We weren't even given a chance to do that. They said they wouldn't consider our motion for reconsideration. They wouldn't. The case was closed and bothered us and all that sort of thing. And so we knew. Mr. Joe, could I ask you a question? You argue collateral estoppel in your briefs. And I was just wondering what additional action the FAA could take or or why you're what is your concern? If Mr. Graham has allowed his airman certificates to expire. And was that independent of this issue of the refusal to drug test and the S.A.P. requirements? You say that question again one more time. I was just trying to review because he was denied his right to have a collateral estoppel applies because he's not given an opportunity to put anything on that could possibly show that he's really not taking anything that caused it. You know, it's something that matter of fact, you know, he's never been found guilty of this kind of thing before. And as the other judge just pointed out, his career is shot at his age right now. His reputation is shot. He can't even go back and work in a simulator sitcom. But he he wasn't guilty of this. We never got a hearing. And we got a hearing. That's all we want is a hearing. Was the expiration of his airman certificates at all related to the issue of his refusal to drug test or his decision not to complete the S.A.P. program? I guess you can say yes, because once all this happened, he knew if he reapplied to the special issues, they've done this in other cases I've handled. They automatically turned down a request for special issues because he's done this other thing. And they consider it. That's why he's essentially convicted without a chance to have a hearing. And I think all we have to have is the Ninth Circuit say he has a chance. He should have a chance to have a hearing, take evidence and have a lawyer and go into court. Some whether it's administrative court or some other court, which usually doesn't happen because it's an FAA matter. We go with the NTSB judges, let them decide. And then if that had happened, I wouldn't be here arguing this at all. I don't know if that answers your question, but. He simply was denied the opportunity to take legal action to defend himself because an MRO in Miami has no idea about him. Except that they say he won't get retested or something like this. I mean, we were simply trying to prove that he was not guilty of anything, but we never got a hearing. We never got to take discovery. Did your client have an interview with the MRO, the medical review officer? No, the medical review officer didn't call him or anything. He just imagined him. I can't quite remember. I don't think the medical review officer. Well, there's something written in the record that says that he's got diabetes, but he's otherwise not really taking any medications. And then the conclusion is, well, that's not enough to explain the low pH. With whom was he communicating when he said when he gave that information? You think my client gave that information? Yes. He didn't talk to the MRO and we talked to somebody because he was asked, what's the explanation? And his explanation is, well, I'm not really sure what the explanation is, but I do have diabetes and that may be it. And I do know, just because I know this, that diabetes can produce a low pH. That's exactly what his doctor told him. Well, it's in the record that he provided that explanation, but it was deemed insufficient. I mean, I'm not a doctor, so maybe it's insufficient because of the degree of disparity. I don't know. Actually, you're absolutely right, and so is the doctor who said that, because that's all that was going on. It was during the holidays, and he said he may have had too much cake or something like this to cause his diabetes to get his A1C to go up above where it should have. That has nothing to do with him being found guilty of drug and alcohol use. One, the regulation wasn't followed by the description of the agency, and he was given no chance to have a hearing and discovery about this and present his side of the case at all. So all we'd seek is to let him present his side of the case to some tribunal, most likely the NTSB, which will still consider a case like this this late with their ALJs, and we can get into this discovery that we never were given a chance to. Because you can't say that they took no action when they did take action, and his action is to blame him for having a little bit of A1C elevation over the holidays and no opportunity to have me take depositions at the MRO and other people that were saying otherwise. If they were going to say otherwise, we don't even know what the MRO would have said because FAA precluded it. They wouldn't accept anything further. That's the whole point of what I was trying to say earlier, that when I asked Mr. Christiansen to allow us to get into this, he said the case is closed. We're not taking any action. Well, I would submit to this court that that's just not correct, and he should be given a chance to do discovery and put forth his evidence and have a hearing. Our process was to not. That's, I guess, what I'm trying to say, and I just think that we can't have all these mistakes made by the agency and have it stand as a decision against Mr. Bramley's career because he's finished if this happens. So if he just has a chance to put evidence on, and I know exactly what kind of evidence to get. I do it all the time. I haven't had an unsuccessful drug and alcohol case that we've accepted in years, and therefore, I feel very strongly that we will get the correct information, and it's nothing but a slight elevation of A1C, which doesn't mean he's drinking or adulterating anything. He's not the kind of person that would do that. He's a very honorable guy, and he's very straightforward. He wants to do the exact right thing, and he felt like they pulled a rug out from under him, and they won't let him get off the floor. All right. I'm going to thank you, Mr. Jobe. You've been arguing for almost 19 minutes, unless my colleagues have any questions. I'm going to thank you both very much for the argument. This case is submitted, and we are adjourned. Thank you both. Thank you, Your Honor. Appreciate it.
judges: FLETCHER, KOH, Kane